USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11-28-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INFINITY HEADWEAR & APPAREL,

       Plaintiff,

  - against -

JAY FRANCO & SONS, et al.,

       Defendants.

ORDER AND OPINION

15-CV-1259 (JPO) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiff Infinity Headwear & Apparel ("Infinity") commenced this patent infringement action against Defendants Jay Franco & Sons and Jay at Play (collectively, "Defendants") on December 22, 2014. (Doc. No. 1.) On May 9, 2016, the Court sanctioned Defendants for their failure to comply with the Court's October 23, 2015 Order ("October 23 Order") and awarded Plaintiff Infinity Headwear & Apparel ("Infinity") reasonable expenses, including attorneys' fees, associated with Defendants' noncompliance with the October 23 Order. (Doc. No. 167 ("May 9 Order").) On May 28, 2016, Infinity filed a letter-motion seeking a total award of $22,850.46 in attorneys' fees which it alleges were "incurred in connection with Jay Franco's relevant discovery abuses." (Doc. No. 172.) On June 21, 2016, Infinity filed a supplemental letter-motion seeking an additional $12,159.87. (Doc. No. 178.) For the reasons that follow, Infinity's motion is **GRANTED** in part and **DENIED** in part, and the Court awards Infinity **$13,989.95** in attorneys' fees.

## II. BACKGROUND

The Court set forth the history of the Parties' protracted discovery disputes in its May 9 Order so familiarity with the facts is assumed here. (*See* Doc. No. 167.) *Infinity Headwear &*

*Apparel v. Jay Franco & Sons*, 15-CV-1259 (JPO) (RLE), 2016 U.S. Dist. LEXIS 61202 (S.D.N.Y. May 9, 2016). On October 23, 2016, the Court ordered Defendants to supplement a number of its discovery responses to Infinity, finding that the responses it had provided to several interrogatories and document requests were insufficient. (Doc. No. 110, ("October 23 Order").) The Court did not, however, find that sanctions against Defendants were warranted. (*Id.* at 8.) On May 9, 2016, the Court addressed Defendants' failure to supplement its responses to Infinity. (Doc. No. 167.) Finding that Defendants had failed to comply with the orders set forth in the October 23 Order, compelling Defendants to supplement its discovery responses to Infinity, the Court ordered that:

> (1) Defendants [would be] sanctioned for their noncompliance with the Court's October 23 Order;
>
> (2) Infinity [would be] awarded reasonable expenses, including attorneys' fees, associated with Defendants' noncompliance with the October 23 Order;
>
> (3) Infinity [] submit evidence of such reasonable expenses by May 30, 2016;
>
> (4) Defendants [] file a response to that submission by June 13, 2016;
>
> (5) Defendants [] fully comply with the terms of the October 23 Order by May 30, 2016.

*Id.* at 8.

On May 28, 2016, Infinity filed a letter-motion arguing that, pursuant to the May 9 Order, it is entitled to $22,850.46. (Doc. No. 172.) The letter-motion requests fees dating back to June 1, 2015, when counsel billed for time spent "atten[ding] to Franco's responses to discovery requests and to Franco['s] production." (*Id.*, Ex. A.) In their opposition, Defendants argue, first, that sanctions should not be awarded, and second, that Infinity's requested award is not reasonable

2

and covers services not related to the October 23 Order. (Doc. No. 175.) Plaintiffs filed a reply on June 21, 2016 (Doc. No. 177.), and on July 1, 2016, filed a supplemental letter-motion seeking an additional award of $12,159.87, alleging that it had incurred additional expenses associated with Defendants' noncompliance with the October 23 Order and the May 9 Order. (Doc. No. 178.) Defendants filed an opposition on July 22, 2016, arguing that the supplemental fees are excessive. (Doc. No. 182.)

### III. DISCUSSION

#### A. Rule 37 Sanctions

##### 1. Applicable Rule

Under Federal Rule of Civil Procedure 37(a)(5)(A), a court must require the party whose conduct necessitated a motion to compel discovery, or the attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. The court, however, must not order payment if: "the movant filed the motion before attempting in good faith to obtain . . . the discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

For failing to obey a court order, Rule 37(b)(2)(C) provides that the court must order a party, the attorney advising the party, or both, to pay reasonable expenses, including attorneys' fees, unless the failure was substantially justified, or other circumstances make the award unjust. While a court has "wide discretion in imposing sanctions, including severe sanctions under Rule 37(b)(2)," *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991), "[s]trong sanctions should be imposed only for serious violations of discovery orders . . . when failure to

comply with a court order is due to willfulness or bad faith, or is otherwise culpable." (*Id.* at 1367.)

2. **Application**

Infinity seeks an award of attorneys' fees incurred from nearly the beginning of discovery in this action, contending that such an award is justified by Defendants' repeated discovery abuses throughout the litigation. (Doc. No. 172.) Defendants, meanwhile, argue that any sanctions award is improper because their failure to supplement the discovery responses at issue was "substantially justified" and an "award of expenses is unjust." (Doc. No. 175.)

The Court considered whether sanctions should be awarded against Defendants pursuant to Rule 37 in both the October 23 Order, (Doc. No. 110 at 8.), and the May 9 Order. (Doc. No. 167 at 6-8.) On October 23, 2015, the Court found that sanctions were not appropriate at that time. In the May 9 Order, however, the Court did find that sanctions were appropriate pursuant to Rule 37(b)(2)(C), specifically for Defendants' failure to comply with the terms of the October 23 Order. Neither Party objected to these Orders as provided in the Federal Rules of Civil Procedure, Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to."), or otherwise requested reconsideration. Local Rule 6.3 ("a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion").

Accordingly, the Court will not consider Defendants' arguments regarding whether sanctions are appropriate pursuant to the May 9 Order, as the issue has already been decided. Furthermore, the Court will only consider evidence of Infinity's attorneys' fees associated with Defendants' noncompliance with the October 23 Order, which necessarily will have been

4

incurred after October 23, 2015. Defendants do not object to Infinity's supplemental request for fees on the basis that it is outside the scope of the May 9 Order, so the Court will also consider the fees incurred after Infinity's initial timely fee submission.

**B.    Reasonableness of Expenses**

    **1.    Applicable Law**

In determining the appropriate amount of attorneys' fees to award, the Court must calculate the "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours worked. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008). A "reasonable hourly rate is the rate a paying client would be willing to pay." *McDaniel v. County of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010). The factors relevant to this determination include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 493 F.3d at 114 n.3 (internal quotation marks omitted).

Furthermore, this Circuit has affirmed the "forum rule," whereby a district court will award fees at the going rate in the district in which the court sits. *Simmons*, 575 F.3d at 174. The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

In the Second Circuit, a party seeking an award of attorneys' fees must support its application by submitting time records that detail "for each attorney, the date, hours expended, and the nature of the work done." *N.Y. State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983). "*Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010). When determining the reasonableness of the hours expended by counsel, the Court considers "the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) (citations omitted). Moreover, the Court should reduce the lodestar calculation by any amount of time it deems unreasonable. *See Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

2.  **Counsels' Hourly Rates**

Infinity seeks an award of fees based on the following hourly rates:

| | | |
|---|---|---|
| Burton, James T. | Shareholder, 11 Years of Experience | $275-$290 |
| Rupp, Joshua S. | Associate, 7 Years of Experience | $257-$285 |
| Beckstrom, Ryan | Associate, 3 Years of Experience | $195-$215 |
| Eixenberger, Michael | Summer Associate, Law Student | $150 |

These rates are reasonable in light of counsel's respective credentials and years of experience and the nature of the work performed in this patent infringement action. (Doc. No. 172, Ex 1, ¶ 15-18.) Furthermore, although counsel is based in the state of Utah, the Court follows the "forum

rule," and finds that these rates are below the range charged by patent litigators, and which are regularly approved and awarded by courts in this District.[1]

### 3. Hours Expended

In its original submission, Infinity requested an award of $22,850.46, based on a total of 92.09 hours worked. (Doc. No. 172, Ex. A.) The Court calculates that $6,087.56 was incurred after October 23, 2015, based on a total of 25.06 hours worked.[2] (*See id.*) Infinity's supplemental submission requests an additional $12,159.87, based on a total of 54.83 hours worked on and after May 9, 2016. (Doc. No. 178, Ex. A.) In support of its application, Infinity provides a sworn declaration from its counsel, James Burton ("Burton"), and a spreadsheet containing time blocks of hours worked with the following fields: date, attorney, billed hours, billed amount, percentage attributed to discovery abuses, revised hours, revised amount, invoice number, and original contemporaneous narrative, with discovery abuse attention underlined. (Doc. No. 172, Ex. A.) A similar chart was provided with Infinity's supplemental fee request, along with a second sworn declaration from Burton. (Doc. No. 178, Ex. A.)

As a threshold manner, the Court finds that the spreadsheets satisfy the Second Circuit's contemporaneous time record requirement. *Carey,* 711 F.2d at 1154; *Marion S. Mishkin Law Office v. Lopalo,* 767 F.3d 144, 149 (2d Cir. 2014) (quoting *Cruz v. Local Union No. 3, Int'l Bhd.*

---

[1] *See Lyda v. Fremantlemedia N. Am.,* 10-CV-4773 (DAB) (FM), 2016 U.S. Dist. LEXIS 90469, at *12 (S.D.N.Y. July 11, 2016) (patent infringement case, finding $360 per hour a reasonable rate for an associate with five years of experience and $290 reasonable for an associate with two years of experience); *Microban Prods. Co. v. iSkin Inc.,* 14-CV-05980 (RA) (DF), 2016 U.S. Dist. LEXIS 24119, at *42 (S.D.N.Y. Feb. 23, 2016) (copyright infringement case, finding $350 per hour a reasonable rate for associates "performing junior-level work"); *River Light V, L.P. v. Lin & J Int'l, Inc.,* 2015 U.S. Dist. LEXIS 82940, 13-CV-3669 (DLC), at *34 (S.D.N.Y. June 25, 2015) (trademark infringement case, finding $450-$500 per hour reasonable for attorneys with four to six years of experience); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,* 06-CV-0085 (LBS) (MHD), 2010 U.S. Dist. LEXIS 144425, *57 (S.D.N.Y. Aug. 9, 2010) (counterfeiting case, finding $150 per hour reasonable for legal assistants and law clerks).

[2] The fee application blended the rates of all three attorneys, so it is not immediately apparent from the submissions what the billing rate was for each block of time. The Court will therefore use the average blended hourly rate of $242.92, which is also within the range of hourly rates approved in similar cases in this district.

*of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)) ("So long as an attorney 'made contemporaneous entries as the work was completed, and ... [his] billing was based on these contemporaneous records,' *Carey* is satisfied.")

      **a.    May 28, 2016 Fee Application**

Defendants allege that the fees requested in Infinity's May 28, 2016 fee application are excessive. The billing record spreadsheet, which spans the period before October 23, 2015 through March 30, 2016, contains blocks of time spent on the case each day. (*See* Doc. No. 172, Ex. A.) Some of the tasks in the billing blocks relate to the discovery dispute that is the subject of this fee award, and other tasks relate to other aspects of the litigation. (*Id.*) Infinity has multiplied each block by the percentage of time that it claims was spent on the matters relevant to the instant motion. (Doc. No. 172 at ¶ 19, Ex. A, Col. 5.) Notwithstanding Infinity's efforts, Defendants argue that "not one of those services entries [sic] [after October 23, 2015] specifically addresses non-compliance of those [five] discovery requests." (Doc. No. 175 at 3.) Moreover, they contend that Infinity's "entries are so vague that no one can tell which entries relate to the [five] discovery requests in question, or how much time was spent on each of those [five] discovery requests." (*Id.*)

"While 'block-billing' is disfavored and may lack the specificity required for an award of attorneys' fees, it is 'not prohibited in this Circuit' as long as the Court can determine the reasonableness of the work performed." *Zimmerman v. Portfolio Recovery Assocs., LLC*, 09-CV-4602 (PGG), 2013 U.S. Dist. LEXIS 174182, *33 (S.D.N.Y. Dec. 11, 2013) (quoting *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999)). In this case, it is also necessary that the billing records be specific enough for the Court to determine whether the services performed

were "associated with Defendants' noncompliance with the October 23 Order." (Doc. No. 167 at 8.)

Some billing entries are more clearly associated with Defendants' noncompliance with the October 23 Order than others. For instance, entries such as "Review letter from opposing counsel regarding judge's order to supplement discovery and determine appropriate response," and "review recent 'verifications' and documents submitted by Defendants to determine extent of remaining deficiencies" are unclear as to whether they are relevant or refer to discovery outside the scope of Defendants' failure to comply with the October 23 Order. (Doc. No. 172, Ex. A. at 9.) The majority of entries, however, particularly those after Defendants' November 6, 2015 deadline for compliance had passed, more clearly relate to Infinity's work addressing Defendants' noncompliance. For example: "Attention to issues related to Franco's verifications per the Court's discovery order, including remaining deficiencies"; "attention to review and revisions to letter to court on Franco's on-going failure to comply with discovery order"; were more obviously tasks related to Defendants' continued refusal to comply with the Court's Order. (*See id.* at 10.)

While the entries do provide some basis for the Court to evaluate the relevance of the tasks to the Order, the Court is unable to independently assess Infinity's assignment of percentages to the amount of time in each block spent on work covered by the sanction order. (*See* Doc. No. 172, Ex. A, Col. 5.) For example, in some blocks billed for three different tasks related to the litigation, Infinity has attributed thirty-three percent of the block to the task related to Defendants' noncompliance. In other blocks, two tasks were completed but seventy-five percent of the block is attributed to the relevant task. (*Id.*) In his sworn statement, Burton alleges that "the total hours were multiplied by a percentage that represents the portion of work related

9

to the Defendants' discovery abuses ..." but does not explain whether the apportionment is based on contemporaneous record-keeping or the recollection of counsel at the time the fee application was prepared. (Doc. No. 172 at ¶ 19.)

Accordingly, the Court finds it appropriate to award Infinity eighty percent (80%) of their requested amount for billing in the May 28, 2016 fee application, occurring on or after October 23, 2015, and through March 30, 2016, for a total of **$4,870.05**.

### b. July 1, 2016 Supplemental Fee Application

The hours billed in Infinity's supplemental fee application, which begin on May 9, 2016 and end of June 30, 2016, are primarily devoted to its preparation of both the first and supplemental fee applications. (Doc. No. 178.) Defendants argue that the time spent on the fee applications, which they calculate as 33.2 hours for the first motion and 8.4 hours for the supplemental motion, was excessive, as such work "should not take more than a few hours." (Doc. No. 182.) Defendants allege that the additional 12.7 hours spent preparing for a conference before the undersigned should also be denied as excessive, as the conference itself addressed other issues, such as Defendants' motion to dismiss. (*Id.*)

Although "it is settled that the time spent on a fee application is itself compensable[,]" the Court must nevertheless review such billing records for reasonableness. *Reiter v. Metro. Transp. Auth. of State of New York*, No. 01-CV-2762 (GWG), 2007 U.S. Dist. LEXIS 71008, at *18 (S.D.N.Y. Sept. 25, 2007); accord *Patino v. Brady Parking, Inc.*, 11-CV-03080 (AT) (DF), 2015 U.S. Dist. LEXIS 58772, at *11-12 (S.D.N.Y. Apr. 30, 2015). The Court further notes that at the time that the hours in the supplemental request were billed, Infinity was already aware that they were entitled to an award of fees for their services. The Court thus pays closer attention to "the value of the work product of the particular expenditures to the client's case" for hours arising

after May 9, 2016. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)). The Court is also aware, however, that in the case of the instant fee motions, Infinity's work was not as simple as "prepar[ing] a copy of all invoices, and prepar[ing] a letter request to the Court with the amount of legal fees," as Defendants suggest. (Doc. No. 182.) Rather, because of the nature of the May 9 Order, they were required to comb through time records to identify the relevant entries, in the context of a complex litigation.

In light of the above considerations, the Court finds some of the hours spent on the fee application are "excessive, redundant, or otherwise unnecessary." *Gierlinger*, 160 F.3d at 876 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Approximately twenty of the hours spent on the two fee applications were by Summer Associate Michael Eixenberger ("Eixenberger"). (See Doc. Nos. 178, Ex. 1 at ¶ 14; Ex. A.) While the work of law student clerks is compensable, *see Missouri v. Jenkins*, 491 U.S. 274 (1989), where it is duplicative of the work performed by other counsel, the Court should reduce the lodestar. *See Gierlinger*, 160 F.3d at 876. Here, Eixenberger, Burton, and Joshua Rupp ("Rupp") all billed multiple entries in which they spent time "drafting," "revising" and "finalizing" the motion for fees. Moreover, as the Court sets forth above, the May 9 Order granted sanctions stemming from Defendants' failure to comply with the October 23 Order. Excessive time spent on combing through records predating the October 23 Order was unreasonable.

Additionally, the Court finds that the nature of Infinity's block billing entries make it difficult to determine the reasonableness of the time spent on any single task, such as preparing for the June 23, 2016 conference before the undersigned. For example, while Defendants calculate the 12.7 hours was spent on this task, the Court is not able to determine even the

accuracy of this allegation, as time spent preparing for the conference is block billed with other tasks.

Accordingly, the Court finds it appropriate to award Infinity seventy-five percent (75%) of the award requested in its supplemental submission, for a total of **$9,119.90**.

Combined, the awards from the first and supplement fee applications total **$13,989.95**.

## IV.   CONCLUSION

For the foregoing reasons, Infinity's motion for attorneys' fees is **GRANTED** in part and **DENIED** in part. Based on the records submitted to the Court, the Court finds that Infinity is entitled to an award of attorneys' fees in the amount of **$13,989.95**. This Order resolves the motion pending at docket entry 172.

**SO ORDERED this 28th day of November 2016.**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**