UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INFINITY HEADWEAR & APPAREL, LLC, an
Arkansas limited liability company,
                             Plaintiff,

-v-

JAY FRANCO & SONS, INC., a New York
corporation, and JAY AT PLAY INT'L HK Ltd.,
a Hong Kong limited company,
                             Defendants.

15-CV-1259 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Infinity Headwear & Apparel, LLC ("Infinity") filed this action on December 22, 2014, against Jay Franco & Sons, Inc. and Jay At Play, Int'l HK Ltd. (collectively, "Franco"), alleging that Franco infringes certain claims of U.S. Patent No. 8,864,544 ("the '544 patent"). (Dkt. No. 2.) On September 26, 2016, the Court granted Infinity's motion to amend its complaint (Dkt. No. 187) to add two additional claims: (1) false advertising under the Lanham Act and/or common law; and (2) false patent marking under 35 U.S.C. §§ 287, 292, along with associated factual allegations. (Dkt. No. 188 ("FAC").)

Currently pending before the Court are three matters: (1) Infinity's motion for summary judgment that Franco is liable for infringement of the '544 patent (Dkt. No. 190); (2) Infinity's motion for summary judgment that Franco is liable for false patent marking and false advertising (Dkt. No. 216); and (3) Franco's motion objecting to United States Magistrate Judge Ronald L. Ellis's orders denying its requests to stay litigation of the patent infringement claim.[1]

---

[1] In particular, Franco objects to Magistrate Judge Ellis's order of February 6, 2017 (Dkt. No. 260), which denied Franco's motion for an extension of the expert deadline and a stay of the patent infringement claim, as well as Magistrate Judge Ellis's order of June 19, 2017 (Dkt. No. 300), which also denied a request by Franco to stay the patent infringement claim.

1

For the reasons that follow, Infinity's motion for summary judgment as to patent infringement is denied; Infinity's motion for summary judgment as to false patent marking and false advertising is denied; and Franco's motions objecting to Magistrate Judge Ellis's orders are denied. However, considering the recent decision of Patent Trial and Appeal Board ("PTAB") at the United States Patent and Trademark Office ("PTO") (Dkt. No. 298-1), the Court *sua sponte* concludes that a stay of the patent infringement claim is warranted.

## I. Motion for Summary Judgment as to Patent Infringement

### A. Background

The following facts—which are undisputed[2]—are taken from the record before the Court, including materials incorporated by reference therein. (*See* FAC; Dkt. Nos. 191–92, 194, 199.) Familiarity with the matter, as set forth in the Court's prior opinion in this case, is presumed. *See Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, No. 15 Civ. 1259, 2016 WL 5372843 (S.D.N.Y. Sept. 26, 2016).

The '544 patent, issued on October 21, 2014, is entitled "Hooded Blanket and Stuffed

---

[2] Infinity's motion for summary judgment includes its Statement of Material Facts, as required under Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules"). (Dkt. No. 192.) Franco failed to respond to or even acknowledge this statement. Local Civil Rule 56.1 states that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Because Franco has not complied with this rule, Infinity's Statement of Material Facts is deemed admitted for the purposes of this motion.
    However, "an opposing party's failure to controvert a fact in a Rule 56.1 statement 'does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.'" *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001)).

Toy Combination" and is assigned to Infinity. The invention is directed to "a blanket having a hood comprising an ornamental surface, wherein upon stowing the body of the blanket within an interior volume of the hood, a stuffed toy is provided." ('544 patent at col. 1 ll. 8–11.)

Figure 1 of the '544 patent provides a "perspective view of a hooded blanket and stuffed toy" and is a "representative embodiment" of the claimed invention:



(*See id.* at col. 2 ll. 13–15; Figure 1.)

Franco's allegedly infringing product is a "[w]earable [s]tuffed [a]nimal," called "JAnimals," as depicted in the following image:



(Dkt. No. 191-3 at 1.)

The '544 patent has twenty claims, and Infinity seeks damages and a permanent injunction against Franco for infringement of claims 1–2, 6, 8, 10–11, 15–16, and 18–20. (Dkt. No. 192 ¶ 3.)

## B. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is "material" if it "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), which it believes demonstrate the absence of a genuine issue of material fact. To preclude summary judgment, the non-moving party must then respond with specific facts demonstrating that there are remaining issues for trial. *Ricci*, 557 U.S. at 586 (citing *Celotex*, 477 U.S. at 324). In addition, when deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. A determination as to summary judgment of patent infringement requires a two-step analysis. *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259

(Fed. Cir. 2007). First, the Court construes the claims; second, the Court compares the accused product or process to the properly construed claims. *Id.* The first step is a question of law, and the second step is a question of fact. *Id.* (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)).

"[I]nfringement is assessed by comparing the accused device to the claims[;] the accused device infringes if it incorporates every limitation of a claim, either literally or under the doctrine of equivalents." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) (alterations in original) (quoting *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1372 (Fed. Cir. 2005)) (internal quotation marks omitted). "An infringement issue is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

C.  Discussion

On September 26, 2016, the Court completed the first step of summary judgment on infringement, issuing an order construing the disputed claim terms of the '544 patent. The Court adopted the following constructions:

| Disputed Term | Court's Construction |
|---|---|
| Blanket | a blanket, a comforter, a sheet, a jacket, a windbreaker, a parka, a poncho, a towel, a beach towel, a bath towel, a coat, a wrap, a scarf, a shawl, a cloak, a shirt, a sweatshirt, a hooded shirt, a hooded sweatshirt, or similar piece of clothing |
| Perimeter / Perimeter Edge | the outer limits of an area |

| Positioned Externally | relating to, existing on, or connected with the outside or an outer part |
| --- | --- |
| Continuous Edge Surface | an uninterrupted border |
| Fastener | a device for connecting or joining the ends of two members together |
| Body | the main, principal, or central part |
| Area | plain and ordinary meaning |
| Corner | the position at which two lines, surfaces, or edges meet |

(Dkt. No. 187.)

To carry its burden with respect to the second step of summary judgment of patent infringement—which requires a comparison of the properly construed claims to the accused product and a finding that every claim limitation is found in the accused product—Infinity "must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).

Here, Infinity supplies evidence in the form of (1) infringement contentions, which incorporate visually representative samples of Franco's accused JAnimals product, and (2) other images of the accused product. (Dkt. No. 191 at 8–13, Exs. 2–3.) Infinity argues that its "element-by-element" comparison of the asserted claims of the '544 to the accused products, accompanied by depictions of the accused products provided by Franco, are sufficient to prove infringement in this case. (*See id.* at 14–15 (citing *In re Gabapentin Patent Litig.*, 503 F.3d at 1259).) Franco argues that Infinity's proffer on summary judgment is legally insufficient. (Dkt. No. 194 at 2.)

The evidence supplied by Infinity, without more, is insufficient to meet its initial burden of production on summary judgment. *See Celotex*, 477 U.S. at 323. Infringement contentions

are not "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," which a patent owner must put forth in order to demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c)(1)(A). "[A] plaintiff cannot prove infringement based on contentions alone, and must proffer sufficient evidence supporting the allegations set forth in the infringement contentions." *Google Inc. v. Beneficial Innovations, Inc.*, No. 11 Civ. 229, 2014 WL 4215402, at *4 (E.D. Tex. Aug. 22, 2014); *see also MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11 Civ. 5341, 2014 WL 2859280, at *8 (N.D. Cal. June 20, 2014) ("[I]nfringement contentions, plainly, are not evidence standing on their own.").

In the Southern District of New York, Local Patent Rule 6 requires the patent owner to serve infringement contentions that "identif[y] . . . each claim of each patent-in-suit that is allegedly infringed and each product or process of each opposing party of which the party claiming infringement is aware that allegedly infringes each identified claim." "The purpose of. . . the local patent rules in general . . . is to 'require parties to crystallize their theories of the case early in the litigation' so as to 'prevent the shifting sands approach to claim construction.'" *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006)). Infringement contentions provide notice to the alleged infringer as to the patent owner's theory of infringement; they are not evidence for purposes of summary judgment.

Infinity's infringement contentions are accompanied by images of the accused products "from Jay Franco's own document production." (*See* Dkt. No. 199 at 7 (citing Dkt. No. 191 at 9–10; Dkt. No. 191-3).) While these images are evidence that the Court will consider, they do not demonstrate, in this case, the absence of a genuine issue of material fact as to patent

infringement.

In particular, Infinity acknowledges that "the crux of the parties' legal dispute as to infringement" is whether the allegedly infringing product contains the "blanket" limitation of the claims, as properly construed by the Court in its claim construction order. (Dkt. No. 191 at 14.) Neither the infringement contentions nor the images of the accused products demonstrate whether the accused products, which Franco has previously described as "full body 'onesie' type garments" (Dkt. No. 137 at 22), are "blankets" under the Court's construction.

Infinity argues that, because the Court's construction of "blanket" includes certain articles of clothing, and because Franco's attorney described its product as a three-dimensional garment or article of clothing, there can be no doubt that the accused products meet the "blanket" limitation. (Dkt. No. 191 at 14 (citing Dkt. No. 191-4).) But the Court's construction of "blanket" does not cover *every* garment or article of clothing. It is expressly limited to "a blanket, a comforter, a sheet, a jacket, a windbreaker, a parka, a poncho, a towel, a beach towel, a bath towel, a coat, a wrap, a scarf, a shawl, a cloak, a shirt, a sweatshirt, a hooded shirt, a hooded sweatshirt, or similar piece of clothing." (Dkt. No. 187 at 21.) No reference is made to a "onesie" in the Court's construction. (*See* Dkt. No. 99 at 5 ("Not even Plaintiff's alternate proposed 'similar piece of clothing' definition for 'blanket' would cover a full body garment or any type of clothing having two (2) arms and two (2) legs, since none of the exemplary products listed by Infinity in the '544 specification are similar to a onesie garment with a pair of arms and a pair of legs.").)

Infinity has not met its burden to "supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." *Rohm*, 127 F.3d at 1092. Drawing all reasonable factual inferences in favor of the non-moving party, the Court denies Infinity's motion for summary judgment that Franco is liable for infringement of the '544 patent.

8

## II. Motion for Summary Judgment as to Liability for False Patent Marking and False Advertising

The Court previously granted Infinity's motion for leave to amend its complaint to add two additional claims: (1) false advertising and (2) false patent marking. (Dkt. No. 187.) Now, Infinity moves for summary judgment as to liability on both claims. (Dkt. No. 216.)

### A. Background

The following facts are not in dispute unless otherwise noted.[3]

Franco markets and sells its allegedly infringing products under the brand name "JAnimals Wearable Stuffed Animals." (Dkt. No. 267 ¶ 1.) These products are marked with the words, "Worldwide patent pending."[4] However, Franco has no ownership interest in any patent, pending or otherwise, that covers its products. (Dkt. No. 267 ¶ 4.) Indeed, the president of Franco, Joseph A. Sutton, testified at his deposition that Franco does not "have patent rights in the Janimal product." (Dkt. No. 217-2 at 170:2–7.)

Franco did attempt to procure patent rights to its products, but those efforts were unsuccessful. Specifically, on May 1, 2013, a subsidiary of Franco attempted to license a provisional patent application that covered its product. (*See* Dkt. No. 217-7.) The provisional patent application that was the subject of the license (Dkt. No. 217-8), however, had been abandoned prior to the execution of the license. (Dkt. No. 267 ¶ 7.) Franco never had patent rights in its products, which it nevertheless marked "Worldwide patent pending."

---

[3] The facts are drawn from Plaintiff's Rule 56.1 Statement (Dkt. No. 218); Defendants' Response to Plaintiff's Rule 56.1 Statement (Dkt. No. 259); Plaintiff's Reply Rule 56.1 Statement (Dkt. No. 267); and the exhibits attached to Plaintiff's memorandum of law in support of its motion for summary judgment (Dkt. No. 217).

[4] Franco denies that it *currently* marks its products with those words. (Dkt. No. 267 ¶ 3.) However, the images submitted with Plaintiff's motion for summary judgment clearly demonstrate such marking was displayed on the products at some point. (*See* Dkt. No. 217-1 at 001, 007; Dkt. No. 217-4.)

The Court addresses Infinity's motion for summary judgment as to (1) false patent marking; and (2) false advertising.

**B.     False Patent Marking**

The Patent Act prohibits "mark[ing] upon, or affix[ing] to, or us[ing] in advertising in connection with any article, the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public." 35 U.S.C. § 292(a). To bring suit under the false marking statute, a plaintiff must have "suffered a competitive injury as a result of a violation" of the marking statute. *Id.* § 292(b).

The Federal Circuit has explained that a competitive injury is "[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015) (alteration in original) (quoting Black's Law Dictionary (9th ed. 2009)). "[A]n injury is only a 'competitive injury' if it results from competition" and "an entity has standing under § 292(b) if it can demonstrate competitive injury that was caused by the alleged false marking." *Id.* at 1402. Franco argues that the Court should deny Infinity's motion for summary judgment as to false patent marking because Infinity has failed to present sufficient evidence of competitive injury. (Dkt. No. 257 at 5–6.)

Infinity argues that Franco's false marking led to a competitive injury because Franco's "products directly compete with Infinity's products in the marketplace" (Dkt. No. 217 at 12), thereby "afford[ing] Jay Franco a competitive advantage over Infinity, creating barriers to marketplace entry and penetration, [and] stifling Infinity's ability to freely market and price its products." (Dkt. No. 266 at 9.)

In support of this claim, Infinity relies on testimony from Franco's president, Mr. Sutton, about marking the accused products "Worldwide patent pending":

> Q. Why was it important?
> A. As I stated because it gives the credence to the fact that the product is not infringeable on.
> Q. It provides some measure of exclusivity, correct?
> A. Correct.
> Q. Meaning you can have a product that others can't use?
> A. Correct.
> Q. And that is valuable in the market, correct?
> A. Right.
> Q. So when you go to a retailer you can say I am the only one that can provide this product to you, correct?
> A. Correct.
> Q. Isn't that why [Franco's subsidiary] marked it as "worldwide patent pending" to be able to have some leverage in these discussions, correct?
> A. Correct.
> Q. And exclude others, correct?
> A. Correct.
> …
> A. If you are stating it is an advantage, yes, there is an advantage.

(Dkt. No. 217-2 at 79:10–80:9, 88:25–89:2.) Infinity believes that Mr. Sutton's testimony is sufficient to carry its burden on summary judgment, and that "[n]othing more is require[d] to prove competitive injury." (Dkt. No. 217 at 12 (citing *Sukumar*, 785 F.3d at 1399–1402).)

But Mr. Sutton's testimony establishes only his personal belief in the potential market benefits of marking his products "Worldwide patent pending." In *Gravelle v. Kaba Ilco Corp.*, the Federal Circuit recently concluded that such speculative testimony from a plaintiff was insufficient to establish the causal nexus between false marking and competitive injury. No. 2016-2318, 2017 WL 1349278, at *4 (Fed. Cir. Apr. 12, 2017) (per curiam) (nonprecedential). In *Gravelle*, the plaintiff testified that the allegedly patented features were "highly desirable" in the relevant market, and that patent marking "*could* readily influence a buyer[']s purchasing decision." *Id.* (alteration in original). Here, as in *Gravelle*, Infinity must offer evidence "to

11

support the causal proposition, which is anything but obvious, that buyers *actually* purchased the 'patent pending' [products] over [Infinity's products]—or would have bought [Infinity's products] (as opposed to either [Franco's] or someone else's) had [Franco] not falsely stated 'patent pending.'" *Id.* (emphasis added). That is, Infinity may not rely solely on Defendants' *belief* that marking its products "Worldwide patent pending" gave it an advantage in the marketplace—it must provide evidence of an actual competitive injury.[5]

While the court in *Gravelle* concluded that the plaintiff's testimony did not create a triable issue sufficient to deny summary judgment to a defendant, this Court concludes that such speculative and unsupported testimony does not satisfy Infinity's burden to establish the existence of a competitive injury on summary judgment. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140–41 (2d Cir. 2003) ("[W]here the movant 'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing.") (second alteration in original) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158, 160 (1970)).

Accordingly, the Court denies Infinity's motion for summary judgment that Franco is liable for false patent marking.

---

[5] The Federal Circuit has described ways in which false marking may give rise to a competitive injury. False marking may "deter innovation and stifle competition in the marketplace"; "dissuade" "potential competitors . . . from entering the same market"; "deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement"; or "cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete." *Forest Grp., Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302–03 (Fed. Cir. 2009).

### C. False Advertising

The Lanham Act makes "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact . . . liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a). To state a claim under § 1125, "a plaintiff must allege an injury to a commercial interest in reputation or sales," and that injury must be "proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014). In other words, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and . . . that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

Just as Infinity's evidence is insufficient to show that it suffered a competitive injury caused by Franco's false marking, so too it is insufficient to show an economic injury, or a likelihood of economic injury, "proximately caused" by Franco's advertising. Infinity argues that is has shown such injury through its damages expert, who has determined Defendants' revenue under a theory of profit disgorgement. (Dkt. No. 266 at 10–11.) But Infinity is conflating injury and damages, which are separate inquiries under the Lanham Act. Expert calculations that presume liability do not, in and of themselves, establish that an injury occurred. *See Lexmark*, 134 S. Ct. at 1392. At this stage, Infinity need not "quantify its losses with sufficient certainty to recover damages" in order to have a cause of action, but it must show that the "defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects." *Id.* Infinity has not demonstrated this latter requirement for purposes of summary judgment.

13

Accordingly, the Court denies Infinity's motion for summary judgment that Franco is liable for false advertising.

### III. Motion Objecting to Order Denying Motion for Extension of Expert Deadline and Stay of Patent Infringement Action

#### A. Background

On February 6, 2017, Magistrate Judge Ellis issued an order denying Defendants' request to extend the deadline for expert disclosures and stay the patent infringement cause of action. (Dkt. No. 260 (the "First Order").) And on June 19, 2017, Magistrate Judge Ellis denied a renewed request to stay the patent infringement action. (Dkt. No. 300 (the "Second Order").) Now, Franco seeks an order of this Court reversing those decisions. (*See* Dkt. No. 276; Dkt. No. 301.)

In the First Order, Magistrate Judge Ellis denied Franco's request for a stay of the patent infringement action based on this Court's September 26, 2016, Opinion and Order. (First Order at 2 (citing Dkt. No. 187).) In the September Order, this Court had denied a stay of the patent infringement action pending an *ex parte* reexamination at the PTO because Infinity's proposed amendments would not have become "effective until the reexamination certificate [was] issued and published." (Dkt. No. 187 at 6 (quoting 37 C.F.R. §§ 1.530(k)).)

After Magistrate Judge Ellis issued the First Order, the PTAB issued an opinion on May 1, 2017, affirming the final rejection of claims 1–9 and 18–20 of the '544 patent (claims 10–17 were cancelled during reexamination). (*See* Dkt. No. 298-1.)[6] In light of the PTAB opinion, Franco filed its renewed request for a stay of the patent infringement action. (Dkt. No. 298.)

---

[6] And although new claims 21–25 were added during reexamination (Dkt. No. 298 at 1), they are not asserted in this action, and Infinity has not sought leave to amend its infringement contentions to assert them.

In the Second Order, Magistrate Judge Ellis again denied Franco's request, reiterating the Court's view "that the PTAB reexamination has no consequence on this case until after a reexamination certificate is issued and published." (Second Order at 1 (citing Dkt. No. 187 at 6; Dkt. No. 260 at 2.) Now, Franco requests relief from the First and Second Orders pursuant to Rule 72 of the Federal Rules of Civil Procedure. (Dkt. No. 276; Dkt. No. 301.)

B.  **Legal Standard**

"Rule 72(a) and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide that a district court shall reverse a magistrate judge's order regarding a non-dispositive matter only where the order is 'clearly erroneous or contrary to law.'" *MacNamara v. City of N.Y.*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (quoting 28 U.S.C. § 636(b)(1)(A)). "A magistrate judge's decision is clearly erroneous only if the district court is left with the definite and firm conviction that a mistake has been committed." *Levy v. Young Adult Inst., Inc.*, No. 13 Civ. 2861, 2016 WL 4402038, at *1 (S.D.N.Y. Aug. 18, 2016) (quoting *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361, 2016 WL 236248, at *1 (S.D.N.Y. Jan. 20, 2016)) (internal quotation marks omitted). And "[a] decision is contrary to law if it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id.* (quoting *Golden Horn Shipping Co. Ltd. v. Volans Shipping Co. Ltd.*, No. 14 Civ. 2168, 2015 WL 6684518, at *1 (S.D.N.Y. June 30, 2015)). The standard of review is "highly deferential" as magistrate judges are given "broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 47, 50 (S.D.N.Y. 2014) (quoting *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)).

C. **Discussion**

Having reviewed the parties' filings and Magistrate Judge Ellis's rulings, the Court is left without a "definite and firm conviction that a mistake has been committed." *Levy*, 2016 WL 4402038, at *1 (quoting *Indergit*, 2016 WL 236248, at *1). Magistrate Judge Ellis considered the parties' arguments and this Court's prior decision in determining that Franco is not entitled to a stay of the patent infringement action. This Court sees no error, clear or otherwise, in the reasoning of either the First or Second Order.

However, now that discovery is closed, and now that the Court has considered and denied Infinity's motions for summary judgment, the Court hereby withdraws its Order of Reference to Magistrate Judge Ellis except as necessary to resolve the outstanding motions for sanctions at Docket Number 209 and Docket Number 239.

Moreover, while the fate of the '544 patent in the co-pending *ex parte* reexamination procedure was difficult to discern when the Court issued its order denying Infinity's motion for a stay in September 2016 (*see* Dkt. No. 187), the PTAB's most recent opinion provides additional clarity. At this stage, the PTAB has affirmed the final rejection of claims 1–9 and 18–20 of the '544 patent. (*See* Dkt. No. 298-1.) Infinity has requested rehearing of that decision and has indicated its intent to pursue any appellate rights it may have with the Federal Circuit (*see* Dkt. No. 302), but Infinity's likelihood of success on appeal is low. *See Baseball Quick, LLC v. MLB Advanced Media L.P.*, No. 11 Civ. 1735, 2013 WL 5597185, at *1 (S.D.N.Y. Oct. 9, 2013) (granting a stay and finding that the "principal factor weighing in favor of staying this action is that the USPTO has now rejected all claims of the" patent in suit, which "materially impacts the likelihood that the USPTO will ultimately invalidate the" patent).[7]

---

[7] Indeed, the Federal Circuit reversal rate for Patent Office decisions in 2016 was only seven percent. (Dkt. No. 301-1.)

The Court remains aware that "[u]ntil a reissue application is granted, the original patent shall remain in effect." (Dkt. No. 187 at 7) (alteration in original) (quoting 37 C.F.R. § 1.178). But circumstances have changed since this Court's September 2016 Order. It now appears highly unlikely that any of the asserted claims of the '544 patent will be found valid and enforceable. As a result, the Court *sua sponte* stays the patent infringement claim in order to preserve judicial and party resources.

In this case, there are "substantial patentability issue[s] raised in the inter partes reexamination proceeding" that justify a stay in this case. *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008). Each of the asserted claims has been cancelled or found invalid by the PTAB. (*See* Dkt. No. 298-1.) In the event that "a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). Given the likelihood that the claims at issue in the present action will remain invalid through any rehearing or appeal, the Court is not inclined to proceed to a trial to determine whether such claims are infringed. *See Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.*, 645 F. App'x 1018, 1023 (Fed. Cir. 2016) (nonprecedential) (upholding the "district court's finding that *Fresenius* rendered the suit moot" after the original claims were canceled after reexamination); *Baseball Quick*, 2013 WL 5597185, at *1.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (alteration in original) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). *See also Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. 2003) ("[A] 'federal district court has the inherent power, in the exercise of its discretion, to stay an action.'" (quoting *Twenty First*

*Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992))). In determining whether to issue a stay, the Court considers: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Softview Comput. Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000) (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)).

First, it does not appear that a stay would unduly prejudice the patentee. Infinity argues that a stay would "undo and lay waste to *years* of work by both the Court and the parties." (Dkt. No. 279 at 21.) The Court disagrees. At worst, the stay will delay resolution of the patent infringement action, which, as Infinity points out, "is on the precipice of trial." (Dkt. No. 302 at 1.) But the stay will prevent the Court and parties from unnecessarily engaging in the expense of a trial on patent infringement that may be rendered moot by the issuance of a final reexamination certificate. *See Softview*, 2000 WL 1134471, at *3 (noting that "although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims").

Second, if the Federal Circuit affirms the claim rejections, the issues will be simplified for trial. To be sure, after the reexamination is complete, and assuming that newly added claims 21–25 survive, this Court will need to determine whether the amended claims are "substantially identical," 35 U.S.C. § 252, to the original claims by "analyz[ing] the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1363 (Fed. Cir. 1991). That analysis is required whether or not the patent infringement analysis is stayed. Yet if the Court does not stay the case, resolution of the patent

infringement action in this case may well require two separate trials. Such improvident use of judicial and party resources is unnecessary and unwarranted.

Finally, while discovery is complete in this case, the Court has not set a date for trial. Even at this late stage in the litigation, the Court concludes that the PTAB's rejection of all asserted claims counsels in favor of a stay.

## IV. Conclusion

For the foregoing reasons, Infinity's motion for summary judgment as to patent infringement is DENIED. Infinity's motion for summary judgment as to false patent marking and false advertising is DENIED. And Franco's motion objecting to Magistrate Judge Ellis's Order is DENIED.

The referral to Magistrate Judge Ellis is withdrawn except as necessary to resolve the outstanding motions for sanctions at Docket Number 209 and Docket Number 239. The Court hereby *sua sponte* stays litigation as to the patent infringement claim.

The Clerk of Court is directed to close the motions at Docket Numbers 190, 216, 276, and 301.

SO ORDERED.

Dated: August 2, 2017
      New York, New York

_____
J. PAUL OETKEN
United States District Judge