USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/2017

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

INFINITY HEADWEAR & APPAREL,

          Plaintiff,

    - against -

JAY FRANCO & SONS, et al.,

          Defendants.

**OPINION AND ORDER**

**15-CV-1259 (JPO) (RLE)**

**THE HONORABLE RONALD L. ELLIS, U.S.M.J.:**

## I. INTRODUCTION

Plaintiff Infinity Headwear and Apparel ("Infinity") commenced this patent infringement action against Defendants Jay Franco & Sons and Jay at Play (collectively, "Jay Franco") on December 22, 2014. (Doc. No. 1.) On May 9, 2016, the Court sanctioned Jay Franco for noncompliance with the Court's October 23, 2015 Discovery Order. (Doc. No. 167.) On July 27, 2016, Infinity filed a letter seeking further sanctions against Jay Franco for continued discovery abuses. (Doc. No. 184.) On August 11, 2016, the Court held a telephonic conference on the letter and instructed the Parties to file memoranda on the matter. On October 18, 2016, Infinity filed a letter seeking a pre-motion conference to address Jay Franco's noncompliance with case deadlines and discovery, and seeking sanctions and the scheduling of a settlement conference. (Doc. No. 197, ("October 18 Letter").) On November 1, 2016, Infinity filed another letter, informing the Court that discovery issues remained outstanding. (Doc. No. 203.) On November 3, 2016, the Court scheduled a telephone conference for November 14, 2016, "to discuss [Infinity's] requested motion for sanctions, completion of discovery, and the potential for settlement." (Doc. No. 204.) The Court also ordered the Parties to file proposed dates for

outstanding depositions and indicate any additional discovery the Parties intended to request. (Doc. Nos. 205-07.)

At a November 14, 2016 telephone conference, the Court set deadlines for outstanding depositions and ordered Jay Franco to produce any outstanding discovery by November 16, 2016 ("November 14 Order"). (Doc. No. 211, ("Hr'g Tr.") at 41, 47, 49-51, 55, 57-58.) On November 17, 2016, Infinity filed a letter-motion for discovery sanctions against Jay Franco for not providing responses to discovery requests and for noticing an unauthorized deposition. (Doc. No. 209.) On November 28, 2016, the Court issued an Opinion and Order granting in part and denying in part Infinity's motion for sanctions and supplemental filing, awarding $13,989.95 in attorneys' fees. (Doc. No. 213.)

On December 6, 2016, Infinity filed a supplemental letter to its October 18 Letter, seeking attorneys' fees and costs for Jay Franco's failure to appear at noticed depositions. (Doc. No. 219.) On December 7, 2016, Infinity filed a letter seeking a protective order to "prohibit" two depositions. (Doc. No. 220.) Jay Franco responded to Infinity's letter on December 8, 2016. (Doc. No. 222.) On December 9 and December 13, 2016, Infinity filed supplemental letters requesting attorneys' fees and preclusion orders. (Doc. Nos. 224, 225.) On December 15, 2016, the Court set a briefing schedule for Infinity's motion for sanctions. (Doc. No. 229.) On January 6 and January 9, 2017, Infinity filed an omnibus motion for sanctions seeking (1) an order precluding certain defenses and/or arguments; (2) an award of $84,653.50 in attorneys' fees and $2,746.77 in costs; and (3) a finding of contempt. (Doc. Nos. 239, 241-243.) On February 8, 2017, Jay Franco filed its opposition. (Doc. Nos. 261-63.) On February 15, 2017, Infinity filed its reply, requesting an additional $19,368.20 in attorneys' fees for a combined total of $106,768.47. (Doc. No. 269 at 10.) For the reasons that follow, Infinity's motion is **GRANTED**

in part and **DENIED** in part, and the Court awards Infinity **$26,500** in attorneys' fees and **$2,746.77** in costs.

## II.    BACKGROUND

The Court addressed earlier disputes in its Opinion and Order on November 28, 2016, awarding Infinity attorneys' fees for discovery abuses through June 30, 2016.[1] (Doc. No. 213.)

On July 27, 2016, Infinity filed a letter informing the Court of Jay Franco's continued discovery abuses and seeking additional sanctions. (Doc. No. 184.) Infinity alleged that Jay Franco's responses to Interrogatory No. 5 and Document Request Nos. 12, 18, 23 and 27 remained deficient in violation of the May 9 Sanctions Order. (*Id.* at 5.) On August 11, 2016, the Court held a telephonic hearing on the letter, during which the Court scheduled a meet-and-confer between the parties for August 16, 2016, and instructed the Parties to file responses on the matter. The parties were largely unable to resolve their differences. (Doc. No. 186 at 1.)

On August 16, 2016, Jay Franco filed a letter in compliance with the Court's instruction. (Doc. No. 185.) In response to Interrogatory No. 5, Jay Franco provided a list of previously omitted customer addresses. (*Id.* at 1.) In response to Document Request No. 12, Jay Franco claimed that it conducted a further search of its records and there were no communications related to Infinity, this action, or the '544 Patent beyond those already provided in document nos. 316 to 375. (*Id.* at 2.) In response to Document Request Nos. 18 and 23, Jay Franco claimed that it had conducted a further search of its records and that "purchase orders" were not within the scope of requested documents. *Id.* In response to Document Request No. 27, Jay Franco stated that it had conducted a further search of its records and that its responsive document nos. 397 to 406 were the only relevant documents found. (*Id.* at 3.) Lastly, Jay Franco stated that

---

[1] The Court set forth the history of the Parties' earlier discovery disputes in its May 9 Sanctions Order, so familiarity with the facts is assumed here. (Doc. No. 167.)

they did not produce a privilege log because no privileged documents were withheld. (Doc. No. 185 at 3.) On August 18, 2016, Infinity filed its response, maintaining its argument that Jay Franco's responses remained deficient, and seeking sanctions including attorneys' fees and preclusion orders. (Doc. No. 186.)

On October 18, 2016, Infinity filed a letter requesting a pre-motion conference to address the following motions it anticipated filing:

(1) Motion to compel depositions of Jay Franco's principal witnesses, Joseph Franco ("Franco") and Joseph Sutton ("Sutton");

(2) Motion for sanctions against Jay Franco and its counsel for failing to appear at depositions noticed for October 13 and 14, 2016 ("October depositions");

(3) Motion to compel Jay Franco's compliance with the Court's Patent Case Scheduling Order; and

(4) Motion to compel a settlement conference.

(Doc. No. 197-1.)

On November 1, 2016, Infinity filed another letter informing the Court that Jay Franco was unresponsive to Infinity's communications regarding rescheduling outstanding depositions, scheduling a settlement conference, and coordinating receipt of supplemental responses to Infinity's discovery requests. (Doc. No. 203 at 1-2.) The Court scheduled a telephone conference and ordered the Parties to propose dates for the Franco and Sutton depositions. (Doc. No. 205.) Jay Franco's submission named Geoff Anderson ("Anderson") and Doug Keller ("Keller") as Infinity employees Jay Franco intended to depose about "knowledge of [patent] invalidity concerning the prior art Berkshire Blanket." (Doc. No. 206 at 1.) Infinity's submission responded to Jay Franco's intention to depose Anderson and Keller, stating that accommodating these depositions with the upcoming discovery cut off "is highly prejudicial" but Infinity would make the deponents available. (Doc. No. 207 at 2-3.)

On November 14, 2016, the Court facilitated the scheduling of the Franco and Sutton depositions. (Hr'g Tr. at 41.) The Parties were instructed to confer immediately to schedule the Anderson and Keller depositions and file a letter to the Court with proposed dates. (*Id.* at 42:3-11.) For the first time, Jay Franco informed the Court of its intention to depose Berkshire Blanket ("Berkshire"). (Hr'g Tr. at 12.) The Court stated that Jay Franco could make an application to the Court to depose Berkshire if the depositions of Anderson and Keller suggested that a Berkshire deposition would be needed. (*Id.* at 42:14-19.) The Court ordered Jay Franco to provide responses to Infinity's final set of discovery requests by November 16, 2016, before the depositions of Franco and Sutton. (*Id.* at 55:18-21.) The Court also noted that a submission from Infinity as to the costs associated with the missed October depositions should be forthcoming. (*Id.* at 41:6-9.)

On November 17, 2016, Infinity filed a letter informing the Court that Jay Franco did not respond to Infinity's final set of discovery requests by the November 16, 2016 deadline, and that Jay Franco noticed the deposition of Berkshire without first making an application to the Court. (Doc. No. 209.) Infinity requested (1) an order sanctioning Jay Franco; (2) a preclusion order; (3) an order granting Infinity's previously filed motion for sanctions; (4) an award of costs and fees associated with Jay Franco's failure to attend the October depositions; (5) monetary sanctions to penalize Jay Franco and its counsel and to deter future conduct; (6) permission to re-depose Jay Franco, if necessary, at Jay Franco's expense; and (7) an order precluding the deposition of Berkshire. (*Id.* at 2-3.)

On November 28, 2016, the Court issued an Order granting Infinity's motion for sanctions, awarding attorneys' fees totaling $13,989.95. (Doc. No. 213.) On December 8, 2016, Infinity requested a date certain for payment of the attorneys' fees. (Doc. No. 221.) The Court

set December 22, 2016, as the deadline for payment of fees. (Doc. No. 228.) Jay Franco's counsel requested a ruling on the apportionment of the sanctions amount, (Doc. No. 232.), and Infinity requested that Jay Franco be held in contempt for its failure to pay. (Doc. No. 235.) The Court held that Jay Franco and counsel of record were jointly liable. (Doc. No. 213.) On December 30, 2017, Infinity filed a letter requesting an order to show cause be issued against Jay Franco for its failure to pay the attorneys' fees award. (Doc. No. 237.) That same day, Infinity informed the Court that payment had been substantially satisfied. (Doc. No. 238.)

On December 6, 2016, Infinity supplemented its October 18 letter for sanctions for Jay Franco's failure to appear at the October depositions and non-compliance with the Court's order to respond to Infinity's discovery requests. (Doc. No. 219.)

On December 7, 2016, Infinity filed a letter requesting a pre-motion conference for its anticipated motion for a protective order to "forbid[]" the depositions of Anderson and Keller because "Jay Franco unilaterally noticed the depositions" despite the Court instructing the Parties to confer. (Doc. No. 220 at 2.) On December 8, 2016, Jay Franco responded to Infinity's letter, arguing that the depositions were noticed to occur by mid-December, "as ordered by this Court." (Doc. No. 222.) Jay Franco also requested a pre-motion conference prior to the depositions. *Id.*

On December 9, 2016, Infinity supplemented its November 17, 2016 letter for additional discovery sanctions, including information discovered during the depositions of Franco and Sutton. (Doc. No. 224 at 1-2.) On December 13, 2016, Infinity filed another letter to supplement its filings alleging ongoing violations of the Court's October 23, 2015 Discovery Order and May 9, 2016 Sanctions Order. (*See* Doc. Nos. 110, 167, 184, 186, and 225.) Infinity requested that the Court enter an order granting sanctions and allowing time for Infinity to submit evidence of violations from June 30, 2016, through the present. (Doc. No. 225)

The Court set a briefing schedule for Infinity's motion for sanctions on December 15, 2016. (Doc. No. 229.) On January 6 and January 9, 2017, Infinity filed its motion for sanctions against Jay Franco, alleging the following:

(1) Ongoing failure to comply with Court Orders (October 2015 Discovery Order, May 2016 Sanctions Order, November 14 Discovery Order);

(2) Failure to comply with Orders to propose deposition dates and indicate additional discovery sought (November 3 and November 7 Discovery Orders);

(3) Delays in remitting payment for attorneys' fees awarded November 28, 2016;

(4) Failure to appear at the October depositions, necessitating a motion to compel;

(5) Improper scheduling and subpoenaing of depositions, necessitating a motion for protective order;

(6) Ongoing failure to supplement responses to discovery requests, necessitating a motion to compel; and

(7) Repeated disregard for case deadlines.

(Doc. No. 241. at ii, 18.)

Infinity seeks preclusion orders, a finding of contempt, attorneys' fees in the amount of $84,653.50, and costs in the amount of $2,746.77. (Doc. Nos. 242 at 4-5 and 269-1 at 5.) On February 8, 2017, Jay Franco filed its opposition. (Doc. Nos. 261, 262 and 263.) Jay Franco argues that (1) sanctions are not warranted for Jay Franco's supplemental discovery responses; (2) Jay Franco's prior counsel hid alleged discovery abuses from Jay Franco; and (3) the attorneys' fees billed by Infinity are exaggerated. (Doc. No. 261.) On February 15, 2017, Infinity filed its reply requesting an additional $19,368.20 in attorneys' fees for fees incurred since December 30, 2016, for a combined total of $106,768.47. (Doc. No. 269 at 10.)

In this Opinion and Order, the Court will address Jay Franco's non-compliance with Orders and other instructions from the Court, as well as Jay Franco's failure to appear at the October depositions.

## III. DISCUSSION

### A. Rule 37 Sanctions

#### 1. Applicable Rule

Pursuant to Federal Rule of Civil Procedure 26(e), a disclosing party is required to supplement or correct their response to discovery requests in a timely manner if ordered by the court or if the party learns that the disclosure or response is materially incomplete or incorrect and such information was not otherwise known to the other parties. Fed. R. Civ. P. 26(e)(1)(A)-(B). Pursuant to Rule 30, parties are permitted to conduct depositions with or without leave of the court, subject to notice requirements, time constraints, and other limitations. [insert citation]

If a party fails to comply with discovery, the Court may impose sanctions pursuant to Rule 37. For failure to comply with a discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Additionally, sanctions may include:

(i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)  striking pleadings in whole or in part;

(iv)   staying further proceedings until the order is obeyed;

(v)      dismissing the action or proceeding in whole or in part;

(vi)      rendering a default judgment against the disobedient party; or

(vii)      treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi).

For failure to disclose or supplement a discovery response, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Additionally, sanctions may include:

(i) ordering payment of the reasonable expenses, including attorneys' fees, caused by the failure;

(ii) informing the jury of the party's failure; or

(iii) imposing other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1)(A)-(C).

For failure to attend a party's own deposition, "sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

The party moving to compel discovery is entitled to reasonable expenses incurred in making the motion unless:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Less severe sanctions, such as an assessment of attorneys' fees, is sufficient in some cases, however, more severe sanctions are appropriate in others. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). While a court has "wide discretion in imposing sanctions, including severe sanctions under Rule 37(b)(2)," *Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991), "[s]trong sanctions should be imposed only for serious violations of discovery orders...when failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." (*Id.* at 1367.)

Striking pleadings and dismissing defenses "are the most extreme sanctions available." *See, e.g., Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002). So long as the disobedient party had notice that its conduct risked dismissal, such sanctions are appropriate "where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Id.* Further, "[n]on-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." (*See id.*) (internal quotation marks omitted). Likewise, "a party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault." *Id.* (citing *Monoghan v. SZS 33 Associates, L.P.*, 148 F.R.D. 500, 509 (S.D.N.Y. 1993) (unexcused failure to comply with two discovery orders warranted dismissal)).

### 2. Infinity's Request for Preclusion Orders is Either Moot or Not Appropriate

Infinity requests that "Jay Franco [] be precluded from raising any defenses to Infinity's damages amounts presented at trial," claiming that "relevant financial information has not been

produced ... [and such non-production has] hindered Infinity's ability to properly prepare its damages position." (Doc. No. 241 at 19.) Additionally, Infinity requests that Jay Franco be precluded from filing its opposition to Infinity's motion for partial summary judgment because it has "chronically missed deadlines." (*Id.* at 20.) Third, Infinity requests that "Jay Franco [] be precluded from challenging the validity of the patent-in-suit." *Id.*

On January 12, 2017, the Court granted Jay Franco's letter-motion for new counsel to file its opposition to Infinity's motion for sanctions by February 8, 2017. (Doc. No. 12.) On February 8, 2017, Jay Franco filed an opposition. (Doc. Nos. 261-63.) Per Court order dated January 24, 2017, Jay Franco filed its opposition to Infinity's motion for partial summary judgment on February 3, 2017. (Doc. Nos. 257-58.)

The Court finds that preclusion sanctions are not appropriate because Jay Franco supplemented its discovery responses following Court Orders and Infinity has not demonstrated prejudice that would warrant such severe sanctions. Accordingly, Infinity's request for preclusion orders is **DENIED**.

### 3. Infinity's Request for an Order of Contempt is Not Appropriate

Infinity seeks a finding of contempt against Jay Franco and its counsel. (Doc. No. 241 at 21.) Infinity argues that "it is both necessary and appropriate to issue a finding of contempt" because Jay Franco's failure to obey Court orders is "egregious, and neither Jay Franco nor its counsel has demonstrated remorse or accountability for their flagrant abuses." *Id.*

The Court will not certify the issue of contempt to the District Judge because the sanctions imposed by the Court in this Opinion and Order sufficiently address Jay Franco's discovery abuses. Therefore, Infinity's request for an order of contempt is **DENIED**.

### 4. Infinity's Request for Attorneys' Fees and Costs is an Appropriate Sanction

Infinity seeks an award of attorneys' fees and costs for alleged discovery abuses occurring between July 1, 2016, and February 15, 2017. (Doc. No. 241.) Infinity alleges that Jay Franco failed to comply with the following Court orders:

(1) the October 23, 2015 Discovery Order, ordering Defendants to supplement their interrogatory and document request responses no later than November 6, 2015, (Doc. No. 110.);

(2) the May 9, 2016 Sanctions Order, sanctioning Defendants for their noncompliance with the October 2015 Discovery Order, awarding Infinity reasonable expenses, including attorneys' fees, associated with Defendants' noncompliance with the October 2015 Discovery Order, ordering Infinity to submit evidence of such reasonable expenses by May 30, 2016, permitting Defendants to file a response to that submission by June 13, 2016, and ordering Defendants to fully comply with the terms of the October 2015 Discovery Order by May 30, 2016, (Doc. No. 167.);

(3) the November 3, 2016 Discovery Order, ordering Defendants to file proposed dates for the depositions of Joseph Franco and Joseph Sutton by November 4, 2016, (Doc. No. 205.);

(4) the November 7, 2016 Discovery Order, granting Plaintiff's scheduling request regarding the depositions of Joseph Franco and Joseph Sutton and ordering Parties to file their positions on Plaintiff's other discovery requests by November 10, 2016, (Doc. No. 207.);

(5) the November 14, 2016 Oral Ruling, ordering Defendant to respond to Infinity's final set of written discovery, propounded on October 26, 2016, no later than November 16, 2016, (Doc. No. 211.); and

(6) the November 28, 2016 Fee Order, finding that Infinity is entitled to an award of attorneys' fees in the amount of $13,989.95, and the December 15, 2016 Fee Deadline Order, ordering Defendant to pay Infinity the $13,989.95 on or before December 22, 2016. (Doc. Nos. 213 and 228.)

(Doc. No. 241 at 18.)

Additionally, Infinity alleges that less than twenty-four hours before the properly noticed depositions of Jay Franco's principals, Joseph Sutton and Joseph Franco, were set to begin, Jay Franco's prior counsel objected to the depositions and failed to appear, necessitating a motion to

compel attendance. (Doc. No. 241 at 11.) Infinity's counsel had already traveled from Utah to New York City for the depositions at this time. While Jay Franco's prior counsel had indicated he would be celebrating Jewish holidays during the month of October, he did not inform Infinity's counsel that he would be unavailable to attend the scheduled deposition dates until one day prior. (Doc. No. 211.)

Lastly, Infinity alleges that Jay Franco failed to follow informal instructions from the Court in its November 14, 2016 Oral Ruling concerning the depositions of third-party Berkshire Blanket and Anderman, and Keller. (Doc. Nos. 211 and 241 at 21.) Jay Franco did not identify Berkshire as a potential deponent on November 3, 2016, and subpoenaed Berkshire without providing the Court with adequate notice. (*See* Doc. Nos. 206, 211.) Additionally, Jay Franco noticed the depositions of Anderman and Keller without advance notice. (Doc. No. 220.)

Jay Franco argues that Infinity is not entitled to additional attorneys' fees, and that Jay Franco has fully paid prior fees imposed by the Court. (Doc. No. 261 at 2.) Additionally, Jay Franco asserts that they have sufficiently supplemented their discovery responses. *Id.*

Accordingly, the Court finds an award of attorneys' fees and costs as an appropriate sanction for Jay Franco's failure to appear for the October depositions and failure to comply with Court Orders.

In ruling on various submissions filed by Jay Franco, the Court did not make a finding that such submissions were frivolous and warranted sanctions. (*See* Doc. Nos. 223, 226, 227, 230, 231, 235, 246, 247 and 260.) The Court sees no reason to reconsider that evaluation and will not sanction Jay Franco for its submissions and will not award Infinity attorneys' fees and costs associated with litigating those issues.

**B. Reasonableness of Expenses**

**1. Applicable Law**

In determining the appropriate amount of attorneys' fees to award, the Court must calculate the "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours worked. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008). A "reasonable hourly rate is the rate a paying client would be willing to pay." *McDaniel v. County of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010). The factors relevant to this determination include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 493 F.3d at 114 n.3 (internal quotation marks omitted).

Furthermore, this Circuit has affirmed the "forum rule," whereby a district court will award fees at the going rate in the district in which the court sits. *Simmons v. New York Transit Authority*, 575 F.3d 170, 174 (2009). The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

In the Second Circuit, a party seeking an award of attorneys' fees must support its application by submitting time records that detail "for each attorney, the date, hours expended, and the nature of the work done." *N. Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983). "*Carey* establishes a strict rule from which attorneys may

deviate only in the rarest of cases." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010).

When determining the reasonableness of the hours expended by counsel, the Court considers

"the value of the work product of the specific expenditures to the client's case." *Luciano v.*

*Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) (citations omitted). Moreover, the Court should

reduce the lodestar calculation by any amount of time it deems unreasonable. *See Quarantino v.*

*Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434

(1983)).

### 2. Counsel's Hourly Rates

Infinity seeks an award based on the following hourly rates:

| | | |
|---|---|---|
| Burton, James T. | Shareholder, 11 Years of Experience | $290 |
| Rupp, Joshua S. | Shareholder, 7 Years of Experience | $257 |
| Beckstrom, Ryan R. | Associate, 3 Years of Experience | $195 |

These rates are reasonable in light of counsel's respective credentials and years of

experience and the nature of the work performed in this patent infringement action. (Doc. No.

172, Ex 1, ¶ 15-18.) Although counsel is based in the state of Utah, the Court follows the "forum

rule," and finds that these rates are below the range charged by patent litigators; that are

regularly approved and awarded by courts in this District.[2]

---

[2] *See Lydia v. Fremantlemedia N. Am.*, 10-CV-4773 (DAB) (FM), 2016 U.S. Dist. LEXIS 90469, at *12 (S.D.N.Y. July 11, 2016) (patent infringement case, finding $360 per hour a reasonable rate for an associate with five years of experience and $290 reasonable for an associate with two years of experience); *Microban Prods. Co. v. iSkin Inc.*, 14-CV-05980 (RA) (DF), 2016 U.S. Dist. LEXIS 24119, at *42 (S.D.N.Y. Feb. 23, 2016) (copyright infringement case, finding $350 per hour a reasonable rate for associates "performing junior-level work"); *River Light V, L.P. v. Lin & J Int'l, Inc.*, 2015 U.S. Dist. LEXIS 82940, 13-CV-3669 (DLC), at *34 (S.D.N.Y. June 25, 2015) (trademark infringement case, finding $450-$500 per hour reasonable for attorneys with four to six years of experience).

### 3. Hours Expended

Infinity requests an award of $84,653.50, based on a total of 312.40 hours worked between July 1, 2016, and February 15, 2017. (Doc. No. 242 at Ex. A.) Specifically, Infinity alleges that they have incurred numerous hours in litigation costs in response to Jay Franco's ongoing discovery abuses and Court order violations, including reviewing Jay Franco's discovery responses and supplemental discovery responses, preparing and filing various briefs with the Court, participating in and reviewing hearing and deposition transcripts, reviewing Jay Franco's filings to the Court, and engaging in serial meet-and-confers and other correspondence with opposing counsel. (Doc. No. 242 at 4.) Infinity also seeks an award of $2,746.77 in costs related to the failure of Jay Franco to appear at the October 2016 depositions. (Doc. No. 243.)

In support of its application, Infinity provides a sworn declaration from its counsel, James Burton ("Burton"), and a spreadsheet containing time blocks of hours worked with the following fields: date, attorney, billed hours, and billed amount. (Doc. No. 242 at Ex. A.) Infinity also provides copies of receipts for the flights, hotel, meals, inflight internet and entertainment, and court reporting services purchased in connection with the October 2016 depositions. (*Id.* at Ex. B.)

The Court finds that the spreadsheets satisfy the Second Circuit's contemporaneous time record requirement. *Carey*, 711 F.2d at 1154; *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 149 (2d Cir. 2014) (quoting *Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) ("So long as an attorney 'made contemporaneous entries as the work was completed, and … [his] billing was based on these contemporaneous records,' *Carey* is satisfied.") "While block-billing is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited in this Circuit as long as the Court can determine the

reasonableness of the work performed." *Zimmerman v. Portfolio Recovery Assocs., LLC*, 09-CV-4602 (PGG), 2013 U.S. Dist. LEXIS 174182, *33 (S.D.N.Y. Dec. 11, 2013) (quoting *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999)) (internal quotations omitted). However, it is also necessary that the billing records be specific enough for the Court to determine whether the services performed were "associated with Defendants' noncompliance." (Doc. No. 167 at 8.)

### a. Failure to Comply with the Court's Prior Discovery and Related Sanctions Orders

Infinity notes that the Court had previously sanctioned Jay Franco for its failure to provide responses to Infinity's Interrogatory No. 5 as well as Document Request Nos. 12, 18, 23, and 27. (*See* Doc. Nos. 167, 184, 186, 189, 213, and 225.) Infinity alleges that Jay Franco's responses remain demonstrably deficient. (Doc. No. 239.)

Infinity's Interrogatory No. 5 requests that Defendant "[i]dentify each customer of your product, including name, address, and date of purchase(s) of your product." (Doc. No. 82-1 at 9.) Below is the Court's summary of Jay Franco's responses to Interrogatory No. 5:

| Initial Response | October 2015 Order | Supplemental Responses | May 9 Order | Supplemental Responses |
|---|---|---|---|---|
| Jay Franco's response referred to a document listing each customer. (Doc. Nos. 93-4 & 93-5.) | The Court ordered Jay Franco to supplement its production with the dates of sales and customer addresses, or explain with particularity how such information could be derived from the documents produced. (Doc. No. 110.) | Jay Franco provided the dates of sale, and on November 6, 2015, indicated that they would "try to provide the addresses within the next 5 business days." (Doc. No. 120 at 1.) On December 2, 2015, however, Jay Franco objected to the production on the grounds that (1) the information was irrelevant because of indemnification | The Court found that while Jay Franco's assertions of irrelevance may have had merit, Jay Franco caused unnecessary delay by failing to raise timely objections. (Doc. No. 167 at 3-4.) Jay Franco's behavior constitutes noncompliance with the October | Jay Franco produced a list of addresses of 15 J. Animal customers. (Doc. No. 182.)

Jay Franco subsequently produced a list of addresses of 7 additional customers that had been omitted from the previous submission. (Doc. No. 185.) |

| | | agreements, (2) that it is publically available, and (3) that it is not kept by them in their ordinary course of business. (Doc. No. 134 at 1.) | 23 Order. Jay Franco shall fully comply with the terms of the Order by May 30, 2016. *Id.* | |

The Court finds that Jay Franco has adequately responded to Interrogatory No. 5. Therefore, an award of fees is not warranted.

Infinity's Document Request No. 12 seeks "[a]ll documents and things relating to communications, internally and externally, regarding Infinity, this Action, and/or the '544 Patent." (Doc. No. 82-2 at 9.) Below is the Court's record of Defendants' responses to Document Request No. 12:

| Initial Responses | October 2015 Order | Supplemental Responses | May 9 Order | Supplemental Responses |
|---|---|---|---|---|
| Jay Franco responded by referring Infinity to several documents already produced, including a "letter of non-infringement, invalidity and unenforceability sent to Infinity's Counsel," "prior art references," and "claim construction documents." (Doc. No. 93-5 at 9-10.) Jay Franco further stated that "[n]o non-privileged documents about the patent, the lawsuit, or Infinity have been found." *Id.* | Jay Franco was ordered to supplement their responses by (1) explaining the efforts they had made to locate responsive communications and (2) producing a privilege log in accordance with Federal Rules of Civil Procedure 26 to the extent that they have identified responsive, privileged communications. (Doc. No. 110 at 4-5.) | Jay Franco repeated the same response that they had made in August, and made no attempt to explain the efforts they have made to locate additional responsive communications. (Doc. No. 132 at 2.) They also claimed that to produce a privilege log for all written communications would be "overly burdensome," but articulated no basis for asserting this burden. *Id.* | The Court found that Jay Franco's behavior constituted noncompliance with the October 2015 Order. Jay Franco was ordered to fully comply with the terms of the Order by May 30, 2016. (Doc. No. 167 at 4-5.) | Jay Franco produced additional documents, stating that they had conducted a further search of all corporate records and that these were the rest of the documents regarding "Infinity," "This Action," or "The '544 Patent." (Doc. No. 182.)

Jay Franco subsequently explained that they did not locate any other relevant communications because they did not communicate with others regarding these 3 topics. (Doc. No. 185.) |

The Court finds that Jay Franco has adequately responded to Document Request. No. 12. Therefore, an award of fees is not warranted.

Infinity's Document Request No. 18 seeks "[a]ll documents and things relating to communications with your Customers regarding Your Products." (Doc. No. 82-2 at 11.) Similarly, Infinity's Document Request. No. 23 seeks "[a]ll agreements between You and any Customer relating to Your Product, including all current, former, and proposed agreements." (Doc. No. 82-2 at 12.) Below is the Court's record of Defendants' responses to Document Requests Nos. 18 and 23:

| Initial Responses | October 2015 Order | Supplemental Responses | May 9 Order | Supplemental Responses |
|---|---|---|---|---|
| Jay Franco's response referred Infinity to "indemnification documents with customers." (Doc. Nos. 93-4 & 93-5.)<br><br>Jay Franco's supplemental response referred to a listing of all orders received from customers since the date of infringement and "representative purchase orders used by customers" including "typical indemnification agreements" and "representative purchase orders." *Id.* | Jay Franco was ordered to supplement their response by "explaining with particularity how the documents they provided satisfied the requests." (Doc. No. 110 at 6.) Jay Franco was also ordered to "explain the efforts they have made to locate communications with customers regarding the products at issue." *Id.* The Court also clarified that the relevant time period for such responsive documents was after the October 21, 2014 issuance of Infinity's patent. *Id.* | Jay Franco's supplemental response ignored the Court's prior clarification on the applicable time period for their response and objected to the request, arguing that it was overbroad because it requested documents before the relevant time period. (Doc. No. 134 at 2.)<br><br>Jay Franco then repeated the same response that it had provided to Infinity in August of 2015. (*Id.*; Doc. No. 93-5 at 12-13.) | The Court ordered that Jay Franco's behavior constituted noncompliance with the October 2015 Order. (Doc. No. 167 at 6.) Jay Franco was ordered to fully comply with the terms of the Order by May 30, 2016. *Id.* | Doc. Request 18: Jay Franco produced additional documents, stating that they were the last of the relevant documents and that "[they] satisfy this request since they show how Defendants and their customers communicated regarding the J. Animals product." (Doc. No. 182.)<br><br>Doc. Request 23: Jay Franco stated that they conducted a further search of all corporate records after October 21, 2014 and found no additional "agreements between You and any Customer relating to Your Product." (Doc. No. 182.) They also stated that "purchase |

| | | | | orders" do not fall within the scope of the requested agreements. *Id.*<br><br>In their third supplemental response, Jay Franco stated that they had produced all of the relevant documents and repeated that "purchase orders" do not fall within the scope of the requested agreements. (Doc. No. 185.) |
|---|---|---|---|---|

The Court finds that Jay Franco has adequately responded to Document Request. Nos. 18 and 23. Therefore, an award of fees is not warranted.

Infinity's Document Request No. 27 seeks "[d]ocuments that identify any Customer to whom You have sold, offered to sell, licensed, and/or offered to license Your Product." (Doc. No. 82-2 at 12.) Below is the Court's record of Defendants' responses to Document Request No. 27:

| Initial Response | October 2015 Order | Supplemental Responses | May 9 Order | Supplemental Responses |
|---|---|---|---|---|
| Jay Franco responded that they had produced a list of actual customers. (Doc. No. 93-5 at 14.) | Jay Franco was ordered to supplement their response by including offers to sell, and if they were unable to find the requested communications, to explain to the Court, with particularity, what efforts they had made to locate such offers. (Doc. No. 110 at 7.) | Jay Franco contended that "offers to sell by definition refers to advertisements… for the accused product and all such advertisements have been produced for the period after the patent was granted." (Doc. No. 134 at 3.) Additionally, they argue that "it cannot be determined which customers saw an advertisement (offer | The Court found that Jay Franco's supplemental response failed to either supply the requested communications or to explain with particularity the efforts that they made to locate communications to individual customers with offers to sell their product, and accordingly failed to comply with the | Jay Franco stated that they had already produced documents showing all of their sales and documents showing all open orders. (Doc. No. 182.) They also stated that "a further search of all corporate records after October 21, 2014 shows that the J.Animals product was not licensed to any customer or party, and no offer |

| | | | | |
|---|---|---|---|---|
| | | to sell) and did not purchase the products. Obviously the Defendants do not have such information." *Id.* | October 2015 Order. (Doc. No. 167 at 7.) Jay Franco was ordered to fully comply with the terms of the Order by May 30, 2016. *Id.* | to license was made to any customer or party." (*Id.*) Lastly, they stated that "a further search of the corporate records after October 21, 2014 for "offers to sell" shows that Doc. Nos. 397 to 406 are the only documents found responsive to this request." *Id.*<br><br>Jay Franco's third supplemental response repeated that Doc. Nos. 397 to 406 were the only documents found that were offering to sell additional J Animals products. (Doc. No. 185.) Defendants also stated that "since no privileged documents have been withheld by Defendants, no privilege log was produced." *Id.* |

The Court finds that Defendants have adequately responded to Document Request No. 27. Therefore, an award of fees is not warranted.

The Court has already sanctioned Jay Franco for its previous failures to comply with the October 2015 Order. (*See* Doc. No. 213.) Infinity's request for additional fees is **DENIED**.

### b. Failure to Respond to Infinity's October 26, 2016 Discovery in Violation of the Court's November 14, 2016 Oral Ruling and Necessitating a Motion to Compel

Infinity alleges that Jay Franco has failed to timely respond to any of Infinity's October 26, 2016 discovery requests in violation of the Court's November 14 Order to respond by November 16, 2016. (Doc. No. 241 at 8.) The October 26, 2016, discovery requests include 18

requests for documents, 6 interrogatories, and 16 requests for admissions. (Doc. No. 209 at Ex. 2.) In response, Jay Franco claims that prior counsel never provided the October 26 discovery requests to Jay Franco. (Doc. No. 261 at 6-8.)

Infinity's billing record spreadsheets span the period of July 1, 2016, to February 15, 2017. (*See* Doc. Nos. 240-1, Ex. A and 269-1, Ex. 2A.) Entries that appear to be clearly associated with Jay Franco's noncompliance with the November 14 Order are combined with more general tasks. (*See* Doc. Nos. 240-1, Ex. A and 269-1, Ex. 2A.) For instance, entries such as "attention to the preparation of a letter to Court regarding Jay Franco's failure to timely provide its discovery responses," dated November 17, 2016, are clearly relevant to the November 14 Order, but this line item is block billed with deposition preparation. (Doc. No. 240-1 at Ex. A.) While the entries do provide some basis for the Court to evaluate the relevance of the tasks to the November 14 Order, the Court is unable to independently calculate percentages for the relevant amount of time spent in each block, making it difficult to determine the reasonableness of the time spent on any single task.

Given that a variety of other discovery abuses formed the basis of Infinity's pending motions for sanctions, Infinity's request for attorneys' fees for Jay Franco's failure to comply with the November 14 Order is **GRANTED**, in the amount of **$2,000**. Jay Franco is also ordered to respond to Infinity's October 2016 discovery requests on or before **October 13, 2017**, if they have not done so already. Failure to do so will result in sanctions.

### c. Failure to Appear for Properly Noticed Depositions and Necessitating a Motion to Compel Deposition Attendance

Infinity seeks an award of $2,746.77 in costs as well as an award of attorneys' fees for Jay Franco's failure to attend the October depositions. (Doc. No. 242 at 5.) Jay Franco does not

contest that Infinity incurred costs, but instead argues that former counsel failed to notify them that depositions were scheduled and canceled. (Doc. No. 261 at 8.)

The Court finds the costs reasonable. As for attorneys' fees, some of Infinity's billing entries are more clearly associated with Jay Franco's nonattendance than others. For instance, entries such as "gather and organize documents to use for exhibits in depositions of Joseph Sutton and Mr. Franco," dated October 5, 2016, and "attention to deposition preparation," dated October 10, 2016, do not warrant sanctions because they represent time spent in legitimate preparation for depositions that were eventually taken November 17 and 18, 2016. (Doc. No. 261, Ex. A.) Other entries, such as traveling to New York City for depositions and "attention to issues with Sutton's refusal to attend deposition[s]," dated October 11 and 12, 2016, are clearly related to Jay Franco's nonattendance. *Id.*

Again, Infinity's block billing hinders the Court's ability to independently calculate percentages for the amount of time in each block spent addressing deposition nonattendance and rescheduling those depositions. Upon a review of the billing records, Infinity's request for attorneys' fees is **GRANTED**. The Court awarded **$9,500** in attorneys' fees and **$2,746.77** in costs for a combined total of **$12,246.77**.

### d. Failure to Follow Court's Instruction Regarding the Depositions of Berkshire and Anderman and Keller, Necessitating a Motion for Protective Order

Infinity argues that Jay Franco failed to follow the Court's instructions given during the hearing held on November 14, 2016, regarding the appropriate procedure for pursuing a deposition of Berkshire. (Doc. No. 241 at 13.) Specifically, Infinity claims that Jay Franco attempted to subpoena Berkshire without making an application to the Court. *Id.* Additionally, Infinity notes that Jay Franco unilaterally noticed the depositions of Anderman and Keller in

different parts of the country for the same day with only four business days' notice. (Doc. No. 241 at 14.) In response, Jay Franco claims that it was not made aware that prior counsel attempted to subpoena Berkshire, or schedule the Anderman and Keller depositions. (Doc. No. 261 at 10.) Accordingly, Jay Franco requests that the Court direct those sanctions to Jay Franco's prior counsel. *Id.*

In Infinity's billing record spreadsheets, some billing entries are more clearly associated with Jay Franco's noncompliance than others. (*See* Doc. Nos. 240-1, Ex. A and 269-1, Ex. 2A.) For instance, entries such as "attention to making final preparation for the Franco depositions," dated November 14, 2016, are unclear as to whether they refer to discovery outside the scope of the Berkshire, Anderman, and Keller depositions. (Doc. No. 240-1, Ex. A.) Other entries are more clearly related, such as "continued attention to Berkshire Blanket subpoena and moving to quash the same," dated November 16, 2016, and "continued attention to drafting and revising a motion for protective [order] precluding the Anderman and Keller depositions as noticed," dated December 7, 2016. *Id.*

The Court is unable to independently assign percentages to the amount of time in each block spent on litigating the scheduling of the Anderman and Keller depositions and the filing of a protective order to quash the Berkshire subpoena. Based upon its review of the records, Infinity's request for attorneys' fees is **GRANTED**, in the amount of **$2,500**.

### e. Failure to Supplement Discovery as Required Under Federal Rule of Civil Procedure 26(e) and Necessitating a Motion to Compel

Infinity alleges that Jay Franco has never supplemented any of its sales and financial information. (Doc. No. 241 at 15.) In response, Jay Franco claims that it neither consented to nor had knowledge of prior counsel's discovery abuses and requests that the Court direct any

sanctions to prior counsel. (Doc. No. 261 at 11.) Jay Franco also argues that the fees requested are excessive. (*Id.* at 10-11.)

As the Court decided in its November 28 Opinion and Order and held above, Jay Franco has been sanctioned for its failure to supplement and its most recent supplementation is adequate and does not warrant additional sanctions. Accordingly, Infinity's request for attorneys' fees is **DENIED**. The Court's order above, instructing Jay Franco respond to Infinity's October discovery requests shall be followed, otherwise the Court will impose additional sanctions.

### f. Failure to Follow Case Deadlines

Infinity alleges that since November 2016, Jay Franco and its counsel have repeatedly failed to timely respond to any of Infinity's letters, letter-motions, formal motions, or memoranda. (Doc. No. 241 at 15.) For example, Infinity claims Jay Franco failed to timely oppose Infinity's December 2, 2016 dispositive motion for partial summary judgment. (*Id.* at 16.) Additionally, Infinity claims Jay Franco failed to file a reply to Infinity's December 22, 2016 opposition to Jay Franc's motion for a 60-day stay of proceedings. *Id.* In response, Jay Franco claims that it neither consented to nor had knowledge of prior counsel's discovery abuses and requests that the Court direct any sanctions to prior counsel. (Doc. No. 261 at 11.) Jay Franco also argues that the fees requested in Infinity's January 6 and February 15, 2017 fee applications are excessive. (*Id.* at 10-11.)

To address Jay Franco's failures to comply with Court Orders, Infinity has expended numerous hours in litigating noncompliance before the Court and preparing their fee applications. Although "it is settled that the time spent on a fee application is itself compensable[,]" the Court must nevertheless review such billing records for reasonableness. *Reiter v. metro. Transp. Auth. Of State of New York*, No. 01-CV-2762 (GWG), 2007 U.S. Dist.

LEXIS 71008, at *18 (S.D.N.Y. Sept. 25, 2007); accord *Patino v. Brady Parking, Inc.*, 11-CV-3080 (AT) (DF), 2015 U.S. Dist. LEXIS 58772, at *11-12 (S.D.N.Y. Apr. 30, 2015). Here, the Court finds some of the hours spent on the fee applications "excessive, redundant, and otherwise unnecessary." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The Court has granted Infinity's request for attorneys' fees and costs associated with various noncompliance issues above and denied other requests which do not necessitate sanctions beyond those imposed by the Court's November 28 Order. Upon review of the record, the Court finds it appropriate to **GRANT** Infinity's request for attorneys' fees, in the amount of **$12,500**. Infinity also seeks fees associated with Jay Franco's delay in complying with the Court's December 15 Order, setting a deadline for payment of attorneys' fees pursuant to the Court's November 28 Order. The Court finds that sanctions are not warranted as the Parties resolved this issue without necessitating the Court's intervention.

## IV.    CONCLUSION

For the foregoing reasons, Infinity's motion for sanctions is **GRANTED** in part and **DENIED** in part. Based on the records submitted to the Court, Infinity is entitled to **$26,500** in attorneys' fees and **$2,746.77** in costs. Jay Franco shall make payment and respond to Infinity's October discovery requests on or before **October 13, 2017**.

The Clerk of the Court is instructed to terminate docket entries 209 and 239.


**SO ORDERED this 29th day of September.**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**